## ELIZABETH PETE v. JACOB LAMPI AND OTHERS.[1]

April 17, 1925.

No. 24,421.

**Verdicts sustained.**
    1. The evidence sustains the verdicts.

**Saloonkeeper's surety liable when saloonkeeper is liable for illegal sales.**
    2. The surety on a saloonkeeper's bond was liable in any and all cases of illegal sales in which his principal was liable.

**When such surety was jointly and severally liable.**
    3. Where illegal sales made during the period covered by a particular bond concurred with other illegal sales in causing damage, the surety on such bond was jointly and severally liable therefor to the extent of his bond.

**Answers to hypothetical questions admissible.**
    4. The answers to hypothetical questions were properly admitted; the charge was not prejudicial to defendants; and the verdicts are not excessive.

    *Headnote 1. See Intoxicating Liquors, 33 C. J. p. 651, § 330.
    Headnote 2. See Intoxicating Liquors, 33 C. J. p. 647, § 323.
    Headnote 3. See Intoxicating Liquors, 33 C. J. p. 648, § 323.
    Headnote 4. See Appeal and Error, 4 C. J. p. 1033, § 3015; Evidence, 22 C. J. p 711, § 800; Intoxicating Liquors, 33 C. J. p. 655, § 342; p. 656, § 344; p. 658, § 348.

After the former appeal reported in 150 Minn. 423, 185 N. W. 653, the case was tried before Fesler, J., and a jury which returned a verdict as stated in first paragraph of opinion. Defendants took separate appeals from orders denying their motions for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Victor H. Gran, George H. Spear, John J. Fee* and *O. N. Davies,* for appellants.

*Jenswold, Jenswold & Dahle,* for respondent.

    [1]Reported in 203 N. W. 447.

TAYLOR, C.

Defendant Lampi conducted a saloon in the city of Ely for several years. Defendant Southern Surety Company was the surety on his bond for the year beginning June 5, 1915, and also for the year beginning June 5, 1916. Defendant Aetna Casualty & Surety Company was the surety on his bond for the year beginning June 5, 1917. Each of the three bonds was for the sum of $2,000. On December 29, 1917, Herman Pete died while in a drunken stupor in Lampi's saloon. Plaintiff, his wife, alleging that his death resulted from intoxication caused by liquor illegally furnished him by Lampi, and that she had been injured in her means of support by such intoxication, brought this action for damages under section 3200 of the General Statutes of 1913, found as section 3239 in the General Statutes of 1923. The trial resulted in a verdict for plaintiff. A new trial was granted by this court. Pete v. Lampi, 150 Minn. 423, 185 N. W. 653, to which reference is made for a more extended statement of the facts. The new trial was granted for the reason that the jury had been permitted to allow damages for loss of support during the lifetime of Herman Pete as well as for the loss of support resulting from his death, and that the evidence failed to show any loss of support during his lifetime. At the second trial, damages were allowed only for the loss of support resulting from his death. The jury returned a verdict against Lampi for $8,750, and against the Southern Surety Company for $4,000 of that amount, and against the Aetna Casualty and Surety Company for $2,000 of that amount. The defendants appealed from orders denying their respective motions for judgment notwithstanding the verdict or for a new trial.

The evidence at the second trial does not differ much from that at the first trial. Doctor George T. Ayers, who had known Herman Pete for many years, gave the only expert testimony at either trial. As deputy coroner, he had taken charge of the body and caused an autopsy to be made. At the first trial, he was absent, but his deposition had been taken and was read. At the second trial he was present and testified, and his testimony as to the cause of death,

although in full accord with his former deposition, covered the matter more completely and with greater detail. We see no occasion for discussing the evidence further than to say that it is more favorable to plaintiff than at the first trial and that we find it sufficient to sustain the verdicts.

The court gave the jury the correct rule for determining whether Lampi was liable, and, if so, for determining the amount of his liability. They found a verdict against him for a sum exceeding the aggregate amount of all the bonds.

The court charged the jury to the effect that if illegal sales made by Lampi during the period covered by a particular bond contributed "in a substantial degree to produce the ailment which caused the death of Herman Pete," the surety upon such bond was liable to plaintiff for the damages awarded against Lampi, not exceeding the amount of the bond. The jury found a verdict against the Southern Surety Company for the full amount of its two bonds, and against the Aetna Casualty & Surety Company for the full amount of its one bond, thereby necessarily finding that illegal sales during each of the three periods had contributed toward causing the death of Herman Pete.

Defendants contend that the rule applied by the court is the rule applicable in the case of joint tort-feasors, and that this case does not come within that rule. We are unable to sustain this latter contention. The statute, G. S. 1913, § 3117, makes the surety on such a bond liable in any and all cases in which the principal is liable. Where illegal sales made during a period covered by a particular bond concur with other illegal sales in causing damage to the plaintiff in her means of support, the surety on such bond is jointly and severally liable for such damages to the extent of his bond. While not a tort-feasor, he has made himself responsible for the acts of a tort-feasor, and under the statute is subject to the same liability as his principal. Miles v. National Surety Co. 149 Minn. 187, 182 N. W. 996; Fest v. Olson, 138 Minn. 31, 163 N. W. 798; Posch v. Lion B. & S. Co. 137 Minn. 169, 163 N. W. 131; Wardell v. McConnell, 23 Neb. 152, 36 N. W. 278; Wiley v. National Surety

Co. 103 Neb. 68, 170 N. W. 349; also 21 Ann. Cas. note at page 398. The court applied the correct rule.

The court gave a separate, but similar, charge in respect to each bond in the course of which he stated, in substance, that the surety thereon would be liable if illegal sales made under it contributed in a substantial degree to the "ailment" which caused the death of Herman Pete. Defendants take exception to the word "ailment" as used in the charge, claiming that it implied the existence of disease, and that the autopsy disclosed no evidence of disease. This term was used, perhaps somewhat inaptly, in the opinion on the former appeal, and the trial court made use of the same language. Mr. Pete died, and we fail to see any prejudice to defendants in referring to the cause of his death as an ailment, even if it be inapt. That he had no disease, as that term is usually understood, was clearly brought out and conceded, and was one of the important facts upon which Doctor Ayers based his conclusion that death resulted from alcoholism.

The certificate of death gave acute alcoholism as the cause of death and chronic alcoholism as a contributory cause. The court instructed the jury that this certificate was prima facie evidence of the facts stated therein. At the close of the charge defendants suggested that the jury "be advised that the certificate of death is prima facie and may be rebutted by proper evidence." The court replied, "that is true of any prima facie evidence." Defendants complain because the court did not explain more specifically that the effect of the certificate could be overcome by other evidence. We find no merit in this contention.

Defendants also complain of the rulings admitting the answers of Doctor Ayers to two hypothetical questions. We find no error in these rulings. The facts which defendants claim were omitted from the questions were fully covered by other parts of the doctor's testimony, and according to his statement tended to confirm rather than militate against the opinion expressed in answer to the hypothetical questions.

Defendants claim that the verdict is excessive. The amount of damages was for the jury to determine, and the facts shown in the

record will not justify us in saying that their award was unreasonable.

We find no other questions requiring mention, and the orders are affirmed.