STANLEY SWORSKI v. S. H. COLMAN AND OTHERS.[1]

February 10, 1939.

No. 31,950.

[1]Reported in 283 N. W. 778.

*I. H. Levine* and *S. Wasserman,* for appellant.

*A. E. Haering,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from orders sustaining defendants' separate demurrers to his amended complaint. The grounds for the several demurrers are: (1) That several causes of action are improperly united, and (2) that the facts stated do not constitute a cause of action. The orders do not disclose whether one or both grounds pleaded formed the basis therefor, nor is there any memorandum accompanying them.

The action was brought by the special administrator of the estate of Clifford Sworski, deceased, to recover damages under the death by wrongful act statute, as amended, 3 Mason Minn. St. 1938 Supp. § 9657. Liability against the several defendants is based upon the claim that defendant Colman operated an "on-sale liquor store" at Waconia and was engaged in selling intoxicating liquors to the public for profit; that defendant National Surety Corporation on April 7, 1938, executed, as surety, an "on-sale" liquor bond for Colman by the terms of which it agreed to "indemnify and to pay damages to any person who suffered damages by virtue of any violation of law on the part of" its principal. The penal sum of the bond is $3,000. On May 20, 1938, Clifford, plaintiff's intestate, a young man 19 years of age, entered Colman's liquor store; that Colman or his servants then and there "did wrongfully and unlawfully, and in violation of the laws" of this state, "sell unto Clifford" intoxicating liquors in such quantities that he "became intoxicated and that said intoxicated state and condition caused the said minor

to become seriously ill and weak"; .that, "being in an intoxicated and weakened condition," he was arrested by defendant Radde, a police officer of Waconia; that "said minor's physical strength, condition, stamina and resistance were greatly reduced so that he was unable to bear and/or withstand any abuse." Radde lodged the intoxicated minor in jail at Waconia and "did thereafter and in violation of his duties as a police officer * * * negligently, * * * unlawfully and wrongfully remove and deliver said minor in the aforementioned state and condition to two private citizens, for the purpose of transferring said minor to the jail in Chaska"; that these private citizens were acting under the instructions and orders of Radde, and that they, "while transferring said minor as per Ed Radde's orders, and while said minor was in the weakened condition aforesaid, did maul, beat, bruise and abuse said minor"; and as a "direct and proximate result of the combined unlawful, careless, negligent acts of the defendants as hereinbefore mentioned, the said minor was killed." Decedent's surviving "next of kin" are his father and mother, both of whom "were dependent upon said Clifford * * *." Damages are asked in the amount of $10,000.

■ As will be noted, there is no allegation that Clifford was arrested because he had become intoxicated or was disorderly by reason thereof; nor is any basis or ground pleaded as a reason for his arrest. The mauling, beating, bruising, and other abuse heaped upon Clifford by the private citizens engaged by Radde is nowhere alleged to have been even remotely connected with Colman's sale of liquor. There was no concert of action, no unity of design, nor even any claimed knowledge on Radde's part (or that of his two private citizen assistants) that Colman had anything to do with Clifford's condition as a cause for his arrest. "A person is liable only for the proximate or immediate and direct results of his acts." 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 6999, and case under note 80. "The proximate cause of an injury is that which causes it directly and immediately, or through a natural sequence of events, without the intervention of another independent and efficient cause,—the predominant cause." Id. § 7000. and cases under notes 84 and 85.

Upon the facts here pleaded we can find no basis upon which joint tort liability can be fastened upon defendants.

What has been said is sufficient to sustain the orders. However, we think there is another and more cogent reason why the orders should be affirmed.

■ This action was brought to recover damages under the death by wrongful act statute. In order for plaintiff to prevail it is necessary that the cause be such that Clifford, "had he lived," might have pursued such an action. If he could not, then obviously his administrator may not. The wrong complained of as against Colman and his surety is that Clifford, being a minor, a sale to him was in violation of 1 Mason Minn. St. 1927, § 3239, which provides:

"Every husband, wife, child, parent, guardian, employer, or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, shall have a right of action, in his or her own name, against any person, who shall by illegally selling, bartering, or giving intoxicating liquors, have caused the intoxication of such person, for all damages sustained; * * *."

"The cases are overwhelmingly to the effect that there is no cause of action at common law against a vendor of liquor in favor of those injured by the intoxication of the vendee." Demge v. Feierstein, 222 Wis. 199, 203, 268 N. W. 210, 212, where supporting cases are cited.

Is the quoted statute one giving to the individual who partakes of intoxicating liquors unlawfully furnished by another in such a position that he may maintain an action for the harm *resulting to him* from such intoxication, absent, as here, any allegation of assault, force, deceit, or other like means used by the alleged wrongdoer to bring about his intoxication? The quoted statute negatives any such notion. The cause giving rise to recovery of damages has for its foundation injury "in person or property, or means of support, *by any intoxicated person, or by the intoxication of any person,* * * *."* (Italics supplied.) Under this statute, if there was any wrong done by Colman the cause accrued to the parents of Clifford, in

which event the action should have been brought by them, not by Clifford's administrator. There are several cases sustaining that view, and our attention has not been directed to any holding otherwise. Demge v. Feierstein, *supra;* Murphy v. Willow Springs Brg. Co. 81 Neb. 223, 115 N. W. 761; Couchman v. Prather, 162 Ind. 250, 70 N. E. 240. The Nebraska court in the cited Murphy case had before it also the companion case of Frank and Ellen Murphy against the same defendant (81 Neb. 219, 115 N. W. 763), a case brought by plaintiffs as the parents of their minor son, who had been killed as the result of intoxicating beverages unlawfully furnished by defendant. In the case first cited the action was brought by the father as administrator of his son's estate. In the second, the action was founded upon the theory that the parents had suffered damages because of the son's death due to violation of the liquor laws of that state. In the administrator's case the court sustained defendant's demurrer, being of the view, after reviewing its prior decisions [81 Neb. 227], "that in actions brought under the liquor law, where death follows the injury, the proper party plaintiff is the person entitled to the damages, and not the personal representative of the deceased." In the case brought by the parents in their individual capacity, the trial court's order sustaining defendant's demurrer was reversed. So it seems clear that the question here involved was directly presented to the court for decision.

While we have no case in this jurisdiction directly in point, it is apparent from a reading of the cases cited under the quoted section that the representative of a deceased vendee of intoxicating liquor has never sought recovery under the act. Thus in Koski v. Pakkala, 121 Minn. 450, 453, 141 N. W. 793, 794, 47 L.R.A.(N.S.) 183, an action brought by the widow of Jonas Koski against Mrs. Pakkala, as administratrix of her husband's estate, and the surety on his liquor license bond, the court said:

"The action is not for the injury to her husband, which the unlawful sale brought about, but for an act, whether in itself a tort or not, amounting to a breach of the covenants of the bond, and which resulted in an injury to her, by depriving her of her means of

support. Since, therefore, the wrongful act of Pakkala was a breach of the contract, and an injury to plaintiff distinct from the injury to her husband, a cause of action arising therefrom survived and the action may be prosecuted against the representative of Pakkala's estate, precisely as for the breach of any other contract." (Citing cases.)

In Miles v. National Surety Co. 149 Minn. 187, 182 N. W. 996, the daughter of James P. Miles, deceased, brought an action to recover $2,000 for the death of her father. The right of action was sustained on the theory that she had suffered a monetary loss as decedent's daughter. The same result was reached in Fest v. Olson, 138 Minn. 31, 163 N. W. 798, where the action was brought by plaintiff as the surviving widow of her husband. And in Lynch v. Brennan, 131 Minn. 136, 137, 154 N. W. 795, L. R. A. 1916E, 269, while plaintiff, a "guest" in defendant Brennan's saloon, was "quietly sitting in the saloon," one Tracy, Brennan's barkeeper, poured alcohol upon plaintiff's foot and into his shoe and then set fire to the alcohol, thereby causing severe injury to plaintiff. Defendants' demurrers were overruled by the trial court, and the order was sustained here. The court in discussing the case said that the offense charged was sufficient as against Brennan to fasten liability at common law. With regard to the surety company the court said:

"Its liability, if any exists, is contractual and is predicated upon its bond. The bond must be construed in connection with the statutes which prescribe the terms to be contained in the bond and prescribe its scope and effect. There are two such statutory provisions.

"G. S. 1913, §§ 3155 and 3200 [the latter section is in substance and effect the same as the statute here under discussion], give a right of action to certain persons for injuries caused by persons intoxicated by liquor illegally sold. *There is no liability under these sections in this case, because there is no allegation that the bartender who caused the injury was intoxicated.*" (Italics supplied.)

The court sustained the complaint upon the theory that defendant Brennan violated the provisions of G. S. 1913, §§ 3116 and 3117.

Amongst the conditions of the bond, the one relied upon by the court, it was provided that "said James Brennan will keep a quiet and orderly house." This court was of the view: "No argument should be required to sustain the proposition that when a bartender in charge of a saloon deliberately soaks a guest with an inflammable fluid and then deliberately sets fire to him, he is not keeping 'a quiet and orderly house,' as such language is ordinarily understood." (131 Minn. 139, 154 N. W. 796.)

The latest case we have found is Benes v. Campion, 186 Minn. 578, 244 N. W. 72. There the wife of Joseph Benes was allowed recovery because of loss of her means of support suffered by reason of bodily injuries sustained by her husband from drinking moonshine liquor. The husband did not die but became totally incapacitated by reason of defendant's acts in providing the liquor so that he fell at the roadside and suffered permanent injuries by exposure to ten degrees below zero weather.

We are therefore of opinion, and so hold, that our own cases clearly point to the same result as that reached by the supreme courts in the Wisconsin, Nebraska, and Indiana cases heretofore cited.

Orders affirmed.

